IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**MARY ANN McCONNELL**,

      Plaintiff,

vs.                                                               Civil No. **05-326MCA/LFG**

**TRI-STATE GENERATION AND
TRANSMISSION ASSOCIATION,
INC., et al.,**

      Defendants.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant Springer Electric Cooperative, Inc.'s Combined Motion for Summary Judgment and Memorandum of Law in Support of Motion* [Doc. 5], filed March 30, 2005, and Plaintiff's *Motion to Remand and Grant Immediate Relief from Improper Procedure and Request for Expedited Ruling* [Doc. 14], filed April 15, 2005. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Plaintiff's motion to remand and defers ruling on Defendant's motion for summary judgment.

## I. BACKGROUND

On June 27, 2002, Gregory Jadus, chief pilot for Aerowest Helicopters, Inc., (Aerowest), was conducting a visual air inspection of a power line owned by Defendant Tri-State Generation and Transmission Association, Inc. (Tri-State) and located on the York

Canyon Mine Complex in New Mexico. [Doc. 1, Exh. A at 3-4]. Jadus and his passenger, Tri-State employee Michael Dominguez, were killed when their helicopter struck an unmarked static wire connected to the power line being inspected. [Id. at 6]. Plaintiff Mary Ann McConnell, personal representative of Jadus's estate, thereafter commenced a personal injury action in state court alleging strict liability/ultrahazardous activity, strict liability/inherently dangerous activity, and negligence/wrongful death. [See id. at 1]. As defendants, McConnell named Tri-State and Pittsburg & Midway Coal Mining Co. (Pittsburg), both foreign corporations registered to do business in New Mexico, and Springer Electric Cooperative, Inc. (Springer), a supplier of power in New Mexico. [Id. at 2]. According to McConnell, Tri-State exercised control over the construction, maintenance, and operation of the power line at issue; Springer exercised control over the operation and maintenance of the line by virtue of its delivery of power to various New Mexico communities through a contractual arrangement with Tri-State; and Pittsburg, as owner of the York Canyon Mine Complex, exercised control over activities it permitted on the premises. [Id.].

Tri-State removed the action to federal court on the ground that Springer, a New Mexico corporation, had been fraudulently joined and that, in Springer's absence, complete diversity existed between and among the parties. [Doc. 1 at 2]. Tri-State submitted that because Springer (1) did not own the power line with which Jadus's helicopter collided, (2) was not responsible for the maintenance or operation of that line, and (3) did not contract with Aerowest for the inspection of the line, there was no possibility of recovery against

Springer and, thus, Springer, as a fraudulently joined defendant, should be disregarded for purposes of determining diversity jurisdiction. [Id.].

Springer then moved for summary judgment, arguing that "it is undisputed that Springer did not own, construct, operate, or maintain the lines allegedly involved in the accident, nor did Springer initiate or authorize inspection of the Tri-State lines." [Doc. 5 at 2]. Springer further asserted that (1) it was Tri-State that contracted with Aerowest, Jadus's employer, for the fatal inspection; (2) Springer was not a party to the Tri-State/Aerowest contract; (3) Springer did not authorize the inspection; (4) Springer was not aware of any plans for an inspection; and (5) Springer did not furnish Jadus with any maps or schematics for the inspection. [Id. at 3]. According to Springer, the absence on its part of any control over or responsibility for the injury-causing power line relieves it of any duty of care to Jadus, without which it cannot be held liable. [Id. at 5]. In support of its motion, Springer attached an affidavit from David Spradlin, Springer's general manager. [Id., Exh. A]. Spradlin attests that Tri-State, not Springer, constructed, owned, operated, and maintained the line into which Jadus's helicopter flew, and that Springer did not arrange, authorize, or know of the agreement between Aerowest and Tri-State for the visual inspection. [Id.].

McConnell responds that this Court lacks jurisdiction to entertain Springer's summary-judgment motion because, among other things, the motion is premature and because judgment should be entered in favor of McConnell on her pending motion to remand. McConnell asserts, however, that even at this early, pre-discovery phase of the proceedings, she has presented sufficient evidence to create a genuine issue of material fact

3

with respect to Springer's duty toward Jadus. [Doc. 17 at 3]. As one example of such evidence, McConnell cites *The Pittsburg & Midway Coal Mining Co.'s Answer to Complaint*, in which Pittsburg states that "Defendant [Pittsburg] admits that it constructed and relocated certain power lines pursuant to an Agreement dated November 30, 1999, by and among the Pittsburg & Midway Coal Mining Co., Springer Electric Cooperative, Inc., and Plains Electric Generation and Transmission Cooperative, Inc. . . . ." [Doc. 8 at ¶¶ 17, 50, 61; see also Doc. 17 at 5].

Three days before filing her response to Springer's summary-judgment motion, McConnell filed a *Motion to Remand and Grant Immediate Relief from Improper Procedure and Request for Expedited Ruling*. [Doc. 14; see also Dkt. in case 05cv326]. The basis for the remand motion was that "Tri-State's removal was improper because the genuineness and strength of Plaintiff's case against Springer far surpasses the low 'viability' test required to prevent removal." [Doc. 14 at 1 (*citing* Montano v. Allstate, 2000 WL 525592 (10th Cir. 2000))].[1] Tri-State responded that the motion to remand should be denied because there is no question that McConnell will be unable to recover anything from Springer, which was in no way responsible for the maintenance or operation of the power line involved in the Jadus

---

[1] Although Montano is an unpublished decision and, thus, citation thereto normally would be discouraged, see 10th Cir. R. 36.3(B)(1)-(2), at least one other district court within the Tenth Circuit recently relied on Montano in addressing the issue of fraudulent joinder, having concluded that "the case has persuasive value with respect to this issue which is not resolved in the Tenth Circuit's published opinions, and its rationale assists this court in deciding the instant pending [remand] motion." City of Neodesha, Kansas v. BP Corp. North America Inc., 355 F.Supp.2d 1182, 1186-87 (D.Kan. 2005).

helicopter collision. [See generally Doc. 19].

## II. ANALYSIS

### A. Motion to Remand

Pursuant to 28 U.S.C. § 1332, "district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a). An action initially brought in a state court may be removed to a federal district court pursuant to the authority set forth in 28 U.S.C. § 1441, which states, in pertinent part, that

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district Court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of remand. City of Neodesha, 355 F.Supp.2d at 1185 (*quoting* Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3rd Cir.1990), *cert. denied*, 498 U.S. 1085 (1991)). When removal is challenged, the burden rests with the removing party to prove that jurisdiction exists. Finally, [d]iversity jurisdiction depends upon all parties to one side of the case having a different citizenship from all parties to the opposing side. Id.

The Tenth Circuit has addressed the issue of fraudulent joinder, explaining that

> [i]n many cases, removability can be determined by the original pleadings and normally the statement of a cause of action

5

> against the resident defendant will suffice to prevent removal. But upon specific allegations of fraudulent joinder the court may pierce the pleadings, . . . consider the entire record, and determine the basis of joinder by any means available . . . . The joinder of a resident defendant against whom no cause of action is stated is patent sham . . . and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists . . . . This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty.

Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). The party asserting fraudulent joinder bears a heavy burden inasmuch as that party "must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court." Montano, 2000 WL 525592. After initially resolving all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party, the task of the Court is "then to determine whether that party has any possibility of recovery against the party whose joinder is questioned." Id. "[R]emand is required if any one of the claims against the non-diverse defendant . . . is possibly viable." Id. (*citing* Green v. Amerada Hess Corp., 707 F.2d 201, 207 (5th Cir.1983)).

In the present case, it cannot definitively be said that no cause of action is possibly viable against Springer. See Montano, 2000 WL 525592. Both Springer's summary-judgment motion and Tri-State's *Notice of Removal* focus on the issue of Springer's lack of responsibility for the power line into which Jadus's helicopter flew. [See Doc.1 at 6, "Springer did not own or maintain the static and power lines into which the helicopter collided, nor was it responsible for the placement of the line in that location. It is undisputed

6

that Defendant Springer had absolutely no connection with the particular line at issue since the line was not owned, controlled, operated, or maintained by Springer" and Doc. 5 at 2, "Springer is entitled to summary judgment because it is undisputed that Springer did not own, construct, operate, or maintain the lines allegedly involved in the accident, nor did Springer initiate or authorize inspection of the Tri-State lines."]. Yet in response to the allegation that "Defendants, individually or collectively, constructed, operated, and maintained power lines on their property at the York Canyon Mine Complex," [Doc. 1, Exh. A at ¶ 17], Defendant Pittsburg "admits that it constructed and relocated certain power lines pursuant to an Agreement dated November 30, 1999, by and among the Pittsburg & Midway Coal Mining Co., Springer Electric Cooperative, Inc., and Plains Electric Generation and Transmission Cooperative, Inc. . . . ." [Doc. 8 at ¶¶ 17, 50, 61].

In New Mexico, "[a] public utility has a duty to exercise due care in the erection, maintenance and operation of its line to those likely to come into contact with them." New Mexico Elec. Serv. Co. v. Montanez, 551 P.2d 634, 636 (N.M. 1976). According to Pittsburg, Pittsburg, Springer, and others constructed the power line at issue pursuant to a contractual arrangement. [See Doc. 8 at ¶¶ 17, 50, 61]. That contract, however, has not yet been produced. Thus, it is not possible at this stage of the proceedings to know precisely what Springer's role was in the construction and relocation of power lines at the York Canyon Mine Complex. Absent a full understanding of Springer's role under the November 30, 1999 Agreement, it cannot be said with complete certainty that McConnell has no possibility of stating a cause of action against Springer in state court. See Montano, 2000

WL 525592; see also Smoot v. Chicago, R. I. & P. R. Co., 378 F.2d 879, 882 (10th Cir. 1967).  Because McConnell may be able to state at least one claim against Springer in state court, this matter must be remanded.  See Montano, 2000 WL 525592.

### B. Motion for Summary Judgment

As explained above, Springer has moved for summary judgment on the ground that it cannot be held liable under the circumstances because it owed no duty of care to Jadus. Springer submits that no duty can be imposed where Springer lacked control over or responsibility for the injury-causing instrumentality.  [Doc. 5 at 5].  In response, McConnell contends, among other things, that Springer's summary-judgment motion is premature and that she must be afforded an opportunity to obtain, through discovery, evidence essential to proving Springer's duty to Jadus.  [Doc. 17 at 17]. McConnell asserts that "[s]ufficient time to engage in discovery is especially important where, as is the case here, the facts are in the exclusive control of the defendant."  [Id. at 17-18].  Because the Court concludes that Springer's summary-judgment is premature, the Court will defer ruling on that motion.

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  See id. at

8

248. Judgment is appropriate as a matter of law if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998). "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotation omitted). Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

The Tenth Circuit has repeatedly stated that, although discovery is strongly favored before summary judgment is granted, there is no requirement under Rule 56 that summary judgment not be entered until discovery is complete. Owens v. City of Oklahoma City, 1994 WL 483065 (10th Cir.) (*citing* Bryant v. O'Connor, 848 F.2d 1064, 1068 (10th Cir.1988); Weir v. Anaconda Co., 773 F.2d 1073, 1081 (10th Cir.1985); Miller v. United States, 710 F.2d 656, 666 (10th Cir.), *cert. denied*, 464 U.S. 939 (1983); Brown v. Chaffe, 612 F.2d 497,

504 (10th Cir.1979)). Still, "sufficient time for discovery is especially important when relevant facts are exclusively in the control of the opposing party." Weir, 773 F.2d at 1081. Additionally, "summary judgment should not be based on the deposition or affidavit of an interested party . . . as to the facts known only to him—a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony." Id. (*quoting* Madison v. Deseret Livestock Co., 574 F.2d 1027, 1037 (10th Cir.1978)). In such a situation, Rule 56(f) allows the party opposing summary judgment to file an affidavit stating why that party is unable to present specific facts in opposition. Id. at 1082. The affidavit must state with specificity how additional time would allow the non-movant to meet its burden in opposing summary judgment. Guthrie v. Sawyer, 970 F.2d 733, 738 (10th Cir. 1992). The district court then has discretion to order a continuance or permit additional discovery, Weir, 773 F.2d at 1081, or refuse summary judgment or "make such other order as is just." Guthrie, 970 F.2d at 738.

In support of its motion for summary judgment, Springer has submitted affidavits of David Spradlin, Springer's general manager, and Andy Flageolle, lead safety coordinator for Tri-State. [See Doc. 21, attached Supplemental Affidavit of David Spradlin; Doc. 31]. The Tenth Circuit, however, cautions against entering summary judgment on the basis of affidavits of interested parties. Weir, 773 F.2d at 1081. Additionally, McConnell has submitted a Rule 56(f) affidavit in which counsel for McConnell states that while investigating the circumstances of Jadus' death, she discovered evidence of, among other things, the November 30, 1999 Agreement between Springer and Pittsburg relating to the

10

construction and relocation of certain power lines at the York Canyon Mine Complex. [Doc. 17, Exh. A at 2]. Counsel asserts that the Agreement, which is in the exclusive possession of the Defendants, is relevant to the issue of Springer's duty toward Jadus, and that discovery has yet to commence. Because the Court concludes that entry of summary judgment would be premature at this point in the proceedings, the Court will defer ruling on Springer's motion.

### III. CONCLUSION

As stated above, the Court concludes that Tri-State has not satisfied its burden of demonstrating that Springer is a fraudulently joined party. Because Tri-State has not proven that diversity jurisdiction exists, this matter must be remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico pursuant to 28 U.S.C. § 1447(c). Additionally, because the Court concludes that Springer's motion for summary judgment is premature, a ruling on that motion is deferred.

**IT IS, THEREFORE, ORDERED** that Plaintiff Mary Ann McConnell's *Motion to Remand and Grant Immediate Relief from Improper Procedure and Request for Expedited Ruling* [Doc. 14] is GRANTED;

**IT IS FURTHER ORDERED** that this action be and hereby is remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico pursuant to 28 U.S.C. § 1447(c), each party to bear its own costs and attorneys' fees.

**IT IS FURTHER ORDERED** that a ruling on *Defendant Springer Electric Cooperative, Inc.'s Combined Motion for Summary Judgment and Memorandum of Law in*

*Support of Motion* [Doc. 5] is DEFERRED.

**SO ORDERED** this 20th day of May, 2005, in Albuquerque, New Mexico.

                                      **M. CHRISTINA ARMIJO**
                                      United States District Judge